UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

ERIK WHITE,

                             Petitioner,                 **MEMORANDUM & ORDER**
                                                                  19-CV-1283 (MKB)

        v.

SUPERINTENDENT D. LaCLAIR,

                             Respondent.

----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Petitioner Erik White, proceeding *pro se* and currently incarcerated at Mohawk

Correctional Facility in Rome, New York, filed the above-captioned habeas corpus petition

pursuant to 28 U.S.C. § 2254 on February 27, 2019, alleging that he is being held in violation of

his constitutional rights due to obligations placed on him pursuant to the Sex Offender

Registration Act ("SORA").[1]  (Pet. for Writ of Habeas Corpus ("Pet.") 1, Docket Entry No. 1;

Letter dated Mar. 25, 2019, Docket Entry No. 7.)  Petitioner pleaded guilty to one count of bail

jumping in the first degree, in violation of New York Penal Law ("NYPL") § 215.57, and one

count of promoting a sexual performance by a child, in violation of NYPL § 263.15.  (Pet. 1.)

Petitioner seeks a writ of habeas corpus on the following grounds: (1) ineffective assistance of

---

[1]  Petitioner was convicted under the name Eriq White and is in custody pursuant to a
different conviction than the one challenged in this petition.  (Pet. 1, 15.)  Because the petition
and attached documents are not consecutively paginated, the Court refers to the page numbers
assigned by the electronic case filing system.

counsel, (2) violations of *Brady*[2] and *Rosario*,[3] (3) denial of a speedy trial, and (4) denial of due

process. (*Id.* at 5–12.) Petitioner seeks vacatur of the judgment and "all other sanctions

imposed." (*Id.* at 16.) In a letter dated June 24, 2019, Petitioner specifies that he wishes to be

released from the restrictions imposed under SORA, which he contends render him "in custody"

for habeas purposes.[4] (Letter dated June 24, 2019 ("Pet'r Reply"), Docket Entry No. 9.)

Respondent argues that the Court must dismiss the habeas petition because Petitioner is not in

---

[2] "The basic rule of *Brady* is that the Government has a constitutional duty to disclose favorable evidence to the accused when such evidence is 'material' either to guilt or to punishment." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). A *Brady* claim requires a showing that a prosecutor withheld material evidence. *See United States v. Hsu*, 669 F.3d 112, 117 & n.2 (2d Cir. 2012) ("Evidence is not 'suppressed' within the meaning of *Brady* 'if the defendant or his attorney . . . knew . . . of the essential facts permitting him to take advantage of that evidence.'" (quoting *United States v. Paulino*, 445 F.3d 211, 225 (2d Cir. 2006))).

[3] "Under New York state law, *Rosario* material refers to the statements of testifying witnesses that must be disclosed to the defense prior to opening statements." *Sims v. Artus*, No. 17-CV-6187, 2019 WL 3718024, at *8 (E.D.N.Y. Aug. 7, 2019) (citing *People v. Rosario*, 9 N.Y.2d 286 (1981)). "Federal [c]ourts in New York have consistently held that a *Rosario* claim is a matter of state law not cognizable on habeas review." *Malloy v. Royce*, No. 19-CV-988, 2020 WL 6063809, at *9 (N.D.N.Y. Sept. 17, 2020) (quoting *Danford v. Graham*, No. 12-CV-201, 2014 WL 1412492, at *7 (N.D.N.Y. Apr. 11, 2014)), *report and recommendation adopted*, 2020 WL 6059747 (N.D.N.Y. Oct. 14, 2020); *see also Ward v. Lee*, No. 19-CV-3986, 2020 WL 6784195, at *12 (E.D.N.Y. Nov. 18, 2020) ("*Rosario* violations are not cognizable in habeas corpus proceedings because they are purely errors of state law").

[4] The Court considers the letter as an additional submission in support of the petition. *See Raymond v. New York*, No. 17-CV-6383, 2019 WL 168561, at *5 (E.D.N.Y. Jan. 11, 2019) ("Petitioner does not specifically request the December 15, 2017 letter be considered as an addition to his habeas corpus petition. However, in an abundance of caution, this [c]ourt has fully considered this supplemental submission, which the [c]ourt liberally construes as a claim of actual innocence."); *Patel v. Martuscello*, No. 10-CV-5695, 2015 WL 11401853, at *3 n.6 (E.D.N.Y. May 12, 2015) ("[W]hile [the] petitioner does not list all the claims in his amended petition, he refers to the claims raised in the original petition in the amended petition. As [the] petitioner clearly intended to raise all of these claims, the [c]ourt construes the amended petition as also raising all the grounds stated in the original petition.").

custody and because it is untimely.  (Aff. in Opp'n to Pet. ("Resp't Opp'n"), Docket Entry No. 8.)

For the reasons set forth below, the Court denies the petition.

## I.   Background

On October 25, 2007, Petitioner pleaded guilty to one count of bail jumping in the first degree, and on January 3, 2008, Petitioner pleaded guilty to one count of promoting a sexual performance by a child.  (Pet. 1; Resp't Opp'n 3.)  On February 5, 2008, Petitioner was sentenced to three-and-one-half to seven years of imprisonment.[5]  (Pet. 1.)  Petitioner withdrew his appeal "as advised."[6]  (*Id.* at 5.)  Petitioner finished serving his sentence on August 28, 2013.[7]  (Decision and Order dated Sept. 18, 2017, at 17, annexed to Pet., Docket Entry No. 1.)

On November 19, 2015, Petitioner brought an action pursuant to section 440.10 of the Criminal Procedure Law ("C.P.L."), raising the same claims raised in his petition before the Court: (1) ineffective assistance of counsel, (2) *Brady* and *Rosario* violations, (3) violation of his right to a speedy trial, and (4) violation of his due process rights.  (*Id.* at 2–3; Resp't Opp'n 4.)  On September 18, 2017, the state court dismissed Petitioner's claims.  (Decision and Order dated

---

[5]  Respondent states that Petitioner was sentenced to "concurrent prison terms of three-and-one-half to seven years for his conviction of promoting a sexual performance by a child, and two-and-one-third to seven years for his conviction of first-degree bail jumping."  (Resp't Opp'n 3.)

[6]  In addition to stating that he was "advised" to withdraw his appeal, Petitioner also asserts that he did not appeal.  (Pet. 2.)  Respondent contends that Petitioner appealed, then withdrew his appeal.  (Resp't Opp'n 3–4.)

[7]  In support of his petition, Petitioner attached, *inter alia*, the decision from his post-conviction motion in state court pursuant to section 440.10 of the Criminal Procedure Law. According to the decision, Petitioner completed serving his sentence on August 28, 2013. (Decision and Order dated Sept. 18, 2017, at 17, annexed to Pet.)

Sept. 18, 2017, at 17–21.)  On July 3, 2018, the Appellate Division denied Petitioner's

application for leave to appeal the lower court's denial.  (Pet. 3; Resp't Opp'n 5–7.)

**II.   Discussion**

    **a.   Standard of review**

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody

pursuant to a state court judgment may only be brought on the grounds that his or her custody is

"in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A petitioner is required to show that the state court decision, having been adjudicated on the

merits, is either "contrary to, or involved an unreasonable application of, clearly established

Federal law" or "based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Shoop v. Hill*, 586 U.S. -

--, ---, 139 S. Ct. 504, 406 (Jan. 7, 2019) (per curiam) ("[H]abeas relief may be granted only if

the state court's adjudication 'resulted in a decision that was contrary to, or involved an

unreasonable application of,' Supreme Court precedent that was 'clearly established' at the time

of the adjudication." (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014))); *Kernan v. Hinojosa*,

578 U.S. ---, ---, 136 S. Ct. 1603, 1604 (May 16, 2016) (per curiam); *Hittson v. Chatman*, 576

U.S. 1028, 1028 (2015); *Woods v. Donald*, 575 U.S. 312, 313 (2015) (per curiam); *Johnson v.

Williams*, 568 U.S. 289, 292 (2013).  "An 'adjudication on the merits' is one that '(1) disposes of

the claim on the merits, and (2) reduces its disposition to judgment.'"  *Bell v. Miller*, 500 F.3d

149, 155 (2d Cir. 2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001)); *see also

Kernan*, 578 U.S. at ---, 136 S. Ct. at 1606; *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Under the section 2254(d) standards, a state court's decision must stand as long as "'fairminded

jurists could disagree' on the correctness of that decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

For the purposes of federal habeas review, "clearly established law" is defined as "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Glebe v. Frost*, 574 U.S. 21, 24 (2014) (per curiam) ("As we have repeatedly emphasized, however, circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" (quoting 28 U.S.C. § 2254(d)(1))); *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (per curiam) ("The Sixth Circuit also erred by consulting its own precedents, rather than those of this Court, in assessing the reasonableness of the Kentucky Supreme Court's decision."). A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Williams*, 529 U.S. at 412–13. In order to establish that a state court decision is an unreasonable application of federal law, the state court decision must be "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The decision must be "objectively unreasonable." *Id.*

A court may also grant habeas relief if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "[S]tate-court factual determinations [are not] unreasonable 'merely because [a federal post-conviction court] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015)

(quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).  Rather, factual determinations made by the

state court are "presumed to be correct," and the petitioner bears "the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Even if

"'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on

habeas review that does not suffice to'" overturn a state court's factual determination.  *Wood*,

558 U.S. at 301 (alteration in original) (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)).

A court may overturn a state court's factual determination only if the record cannot "plausibly be

viewed" as consistent with the state court's fact-finding or if "a reasonable factfinder must

conclude" that the state court's decision was inconsistent with the record evidence.  *Rice*, 546

U.S. at 340–41.

### b.  Petitioner is not in custody and therefore cannot pursue his habeas claims

Respondent contends that Petitioner cannot bring this habeas petition because he is not

"in custody" within the meaning of section 2254.  (Resp't Opp'n 8–10.)  In support, Respondent

argues that Petitioner finished serving his custodial sentence for the crimes covered by the

petition on August 28, 2013, and the restraints imposed by SORA do not render a person "in

custody" for habeas purposes.  (*Id.*)

Petitioner does not dispute that he is no longer incarcerated on the relevant charge but

argues that he is in custody due to SORA because he (1) "can no longer travel nor vacation

freely" and his international travel is limited, (2) his housing options are constrained by the

"scrutiny, criticism, ridicule, [and] bias" he faces due to his sex offender status, (3) his

employment is limited, and (4) his personal relationships are constrained.[8]  (Pet'r Reply 1–2.)

---

[8]  Petitioner is categorized as a level-two offender.  *See* Division of Criminal Justice
Services, Offender Details,

"In order for a federal court to have jurisdiction over a [section 2254] petition, the petitioner must be 'in custody pursuant to the judgment of a [s]tate court.'" *Nowakowski v. New York*, 835 F.3d 210, 215 (2d Cir. 2016) (quoting 28 U.S.C. § 2254(a)) (citing *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989)); *see also Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (explaining that petitioner who was incarcerated when he filed a habeas petition was "in custody" for habeas purposes); *Finkelstein v. Spitzer*, 455 F.3d 131, 133 (2d Cir. 2006). The petitioner cannot satisfy the requirement when he or she is in custody pursuant to a subsequent conviction. *See Lackawanna Cnty. Dist. Att'y v. Coss*, 532 U.S. 394, 401–02 (2001).

A petitioner is considered to be "in custody" for purposes of habeas relief when on parole or supervised release. *See Dearstyne v. Mazzuca*, 679 F. App'x 21, 22 (2d Cir. 2017) (citing *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)); *see also Jones*, 371 U.S. at 242 (explaining that a paroled habeas petitioner is still in custody because he "is confined by the parole order to a particular community, house, and job at the sufferance of his parole officer," among other restrictions, and "must live in constant fear that a single deviation, however slight, might be enough to result in his being returned to prison"). However, the possibility that a past conviction might be used to enhance a future sentence does not render a petitioner in custody for habeas purposes. *See Maleng*, 490 U.S. at 492 (explaining that this proposition still held when "the possibility of a sentence upon a subsequent conviction being enhanced because of the prior

---

https://www.criminaljustice.ny.gov/SomsSUBDirectory/offenderDetails.jsp?offenderid=34554&lang=EN (last visited Jan. 17, 2021). As a level-two offender, Petitioner is required to register his address and place of employment and verify them annually for life. N.Y. Corr. Law §§ 168-f, 168-h(2); *see also Krull v. Oey*, 805 F. App'x 73, 74 (2d Cir. 2020) ("[The plaintiff] has been assigned a Risk Level Two under SORA, which requires offenders to register annually for life."). Petitioner can accomplish the required verification by returning signed forms through the mail, N.Y. Corr. Law § 168-f(2), but must also present himself to law enforcement every three years to be photographed, *id.* § 168-f(b-3) (explaining that the offender must present himself "within twenty days" of his anniversary of registration).

conviction actually materialized").  A sentence fully expires once the term of incarceration and the associated term of parole or supervised release, if any, has ended.  *Id.* ("[A] prisoner . . . on parole [is] still 'in custody' under his unexpired sentence . . . .  We have never held, however, that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed.").

Other restraints on liberty may also render an individual in custody.  The Second Circuit has held that a petitioner subject to a one-year conditional discharge and required to complete one day of community service suffered a sufficient restraint on liberty and could file a habeas petition.  *Nowakowski*, 835 F.3d at 216 (explaining that restraints were severe enough to render petitioners in custody where they "required petitioners to appear in certain places at certain times, thus preventing them from exercising the free movement and autonomy available to the unrestricted public, or exposed them to future adverse consequences on discretion of the supervising court").  In determining whether a restraint renders a petitioner in custody for purposes of a habeas proceeding, courts look to whether the challenged restraint is "shared by the public generally," whether it requires the petitioner's "physical presence at particular times and locations," and whether violation of the restriction carries potential penalties such as "arrest for noncompliance [or] modification or revocation of [a] conditional discharge."  *Id.* at 217 (quoting *Jones*, 371 U.S. at 240); *see also Vega v. Schneiderman*, 861 F.3d 72, 75 (2d Cir. 2017) (holding that requiring the petitioner to comply with a protective order for two years did not render the petitioner "in custody" because "her sentence never required her physical presence at a particular time or location" and she was never "affirmatively required to do anything such as perform community service").

"[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Ogunwomoju v. United States*, 512 F.3d 69, 74 (2d Cir. 2008) (quoting *Maleng*, 490 U.S. at 492). Collateral consequences include the "inability to vote, engage in certain businesses, hold public office, or serve as a juror," as well as the possibility of a subsequent conviction being enhanced under repeat-offender laws. *Maleng*, 490 U.S. at 491–92; *see also Nowakowski*, 835 F.3d at 216 ("Those cases where courts have declined to find the petitioners sufficiently 'in custody' have typically involved the imposition of fines or civil disabilities, such as suspension of licenses.") (collecting cases). "[T]he entirely speculative possibility of a future charge for a future violation" of an order of protection has been held insufficient to place a petitioner "in custody" for purposes of the habeas statute. *Vega*, 861 F.3d at 74–75 (stating that "[i]f this were enough, every state order of protection could become the subject of federal habeas litigation" and holding that not every restraint not shared by the public renders a petitioner "in custody," only those which "impose a severe restraint on individual liberty or the imminent threat of such a restraint").

SORA, codified at N.Y. Correction Law § 168 *et seq.*, became effective January 21, 1996. *See Jones v. County of Suffolk*, 936 F.3d 108, 111 (2d Cir. 2019); *Doe v. Pataki*, 120 F.2d 1263, 1265 (2d Cir. 1997); *State v. Rashid*, 16 N.Y.3d 1, 17 (2010). "SORA aims both to protect members of the public, especially vulnerable populations, from sex offenders by notifying them of the presence of sex offenders in their communities and to enhance law enforcement authorities' ability to investigate and prosecute sex offenses." *Doe v. Pataki*, 481 F.3d 69, 70 (2d Cir. 2007). SORA requires that sex offenders register with the New York State Division of Criminal Justice Services. *Doe*, 120 F.2d at 1266. SORA created a five-member Board of

Examiners of Sex Offenders (the "Board") to implement and administer several of its provisions and to promulgate guidelines to determine an offender's risk level. *Id.* at 1268 (citing N.Y. Corr. Law § 168-l). The Board categorizes offenders based on their risk of reoffending, ranging from level one (the lowest) to level three (the highest). Public information about offenders is made publicly available in a manner proportionate to the offense level. *Id.* at 1269–70. "For Level-Two and -Three offenders, personal identifying information including registrants' names, photographs, home addresses, and employer addresses, as well as information concerning their crimes of conviction and sentences, is publicly available through a state-operated online database." *Jones*, 936 F.3d at 111. "[A]ny failure by a sex offender to register 'in the manner and within the time periods provided for' by SORA could result in [an offender's] prosecution for criminal misdemeanor or felony charges." *Nolan v. Cuomo*, No. 11-CV-5827, 2013 WL 168674, at *11 (E.D.N.Y. Jan. 16, 2013) (quoting N.Y. Corr. Law § 168-t).

The Second Circuit has not decided whether being subject to SORA restrictions renders a petitioner "in custody" for habeas purposes. *See Teichmann v. New York*, 769 F.3d 821, 827 n.4 (2d Cir. 2014) (declining to reach the issue because it was raised for the first time on appeal). However, district courts in New York, as well as other circuits that have reviewed similar laws, have concluded that sex offender registration requirements do not render a petitioner "in custody" because, in principal part, those requirements are more similar to collateral consequences of conviction than to the strict requirements of parole and also because the statutes were not intended to be punitive. *See Bonser v. Dist. Att'y Monroe Cnty.*, 659 F. App'x 126, 128 (3d Cir. 2016) ("Being subject to [sex offender] registration requirements is itself a collateral consequence, and so too are any penalties — including conviction and incarceration — that result from the violation of such requirements.); *Calhoun v. Att'y Gen. of Colo.*, 745 F.3d 1070,

1074 (10th Cir. 2014) (Colorado sex offender registration statute); *Wilson v. Flaherty*, 689 F.3d 332, 338 (4th Cir. 2012) (Virginia and Texas statutes with similar limitations on a petitioner's ability to, *inter alia*, work, adopt a stepchild, and travel internationally); *Virsnieks v. Smith*, 521 F.3d 707, 718–20 (7th Cir. 2008) (Wisconsin); *Leslie v. Randie*, 296 F.3d 518, 522–23 (6th Cir. 2002) (Ohio); *Henry v. Lungren*, 164 F.3d 1240, 1241–42 (9th Cir. 1999) (California); *McNab v. Kok*, 170 F.3d 1246, 1247 (9th Cir. 1999) (per curiam) (Oregon); *Williamson v. Gregoire*, 151 F.3d 1180, 1185 (9th Cir. 1998) (Washington); *Vere v. Haggett*, No. 08-CV-10852, 2015 WL 1026310, at *6 (S.D.N.Y. Mar. 9, 2015) ("Courts in this Circuit have determined that the SORA registration requirement is a collateral, not a direct, consequence of a person's conviction.") (collecting cases); *Rodriguez v. Att'y Gen.*, No. 10-CV-3868, 2011 WL 519591, at *8 (S.D.N.Y. Feb. 15, 2011), *report and recommendation adopted*, 2011 WL 3875328 (S.D.N.Y. Sept. 2, 2011); *Davis v. Nassau County*, 524 F. Supp. 2d 182, 188 (E.D.N.Y. 2007); *Stephens v. United States*, No. 06-CV-5386, 2007 WL 1233557, at *3 (E.D.N.Y. Apr. 25, 2007).

The Third Circuit reached a different conclusion when reviewing a significantly more restrictive sex offender law. *See Piasecki v. Ct. of Common Pleas, Bucks Cnty., PA*, 917 F.3d 161, 170–71 (3d Cir.), *cert. denied sub nom. Ct. of Common Pleas of Pa. v. Piasecki*, 140 S. Ct. 482 (2019). In *Piasecki*, the court found that "the state's ability to compel a petitioner's attendance weigh[ed] heavily in favor of concluding that the petitioner was in custody." *Id.* at 170. In addition, the court also considered several restraints on petitioner's liberty, including the fact that petitioner "was not free to 'come and go as he please[d],'" each "change of address, including any temporary stay at a different residence, required an accompanying trip to the State Police barracks within three business days," and the petitioner was required "to regularly report to police if he had no address and became homeless." *Id.* (alteration in original) (quoting

11

*Hensley v. Mun. Ct.*, 411 U.S. 345, 351 (1973)).  Thus, the petitioner "was required 'to be in a certain place' or 'one of several places' — a State Police barracks — at least four times a year for the rest of his life," and was "compelled . . . to personally report to the State Police if he operated a car, began storing his car in a different location, changed his phone number, or created a new email address."  *Id.*  He also could have "no 'computer internet use.'"  *Id.*  The court found these restraints to be "sufficiently restrictive to constitute custody" because they were "severe," "immediate (i.e. not speculative)," and "not shared by the public generally." *Piasecki*, 917 F.3d at 170–71.  In addition to finding that the law was an extensive restraint on liberty, the court also found that the law was punitive in intent, following the Pennsylvania Supreme Court's finding that all provisions of the statute were punitive, because it limited a registrant's ability to travel and "impos[ed] an affirmative restraint that was disproportionate to any public purpose that it served."  *Id.* at 174–75.  Finally, the requirements were imposed "as part of the judgment of sentence."  *Id.* at 175.

In reaching its conclusion, the court in *Piasecki* recognized that it was departing from decisions by other circuit courts.  *Id.* at 172.  It did so for two reasons: first, the Third Circuit had "explicitly departed from the courts that have held that registration requirements are not custodial because they do not require pre-approval from the government before a registrant travels, thus not limiting his or her ability to move freely," and second, the registration requirements upheld by many of those other courts "were not as onerous as those imposed under [the statute at issue in *Piasecki*]."  *Id.*  In particular, even if the petitioner chose not to travel, change his e-mail address, or take any other action that required appearance at a State Police barracks, he would have "to report to a police station every three months for the rest of his life." *Id.* at 172–73.  The Third Circuit made clear that its decision did not read the "in custody"

12

requirement out of section 2254, and that it merely held "that the custodial jurisdiction requirement is satisfied by severe, immediate, physical, and (according to the state's own definition) punitive restraints on liberty that are imposed pursuant to — and included in — the judgment of a state court such as the one here." *Id.* at 176.

Petitioner completed serving his term of incarceration for the convictions challenged in the petition, and was therefore not "in custody" by virtue of being incarcerated when he filed this petition. *See Nowakowski*, 835 F.3d at 215.  Nor was Petitioner in custody as a result of parole or supervision.[9]

The Court finds, consistent with other circuit courts and district courts in this circuit, that SORA's requirements are similar to collateral consequences of a conviction rather than to the comprehensive regime of parole.  While SORA imposes some restraints on Petitioner's liberty that are not shared by the general public, including the fact that he must verify his address and employment annually, N.Y. Corr. Law § 168-f(2), and must be photographed "at the law enforcement agency having jurisdiction" every three years, *id.* § 168-f(b-3), these requirements are insufficient to render Petitioner in custody.  *See Nowakowski*, 835 F.3d at 216 (collecting cases showing that "the imposition of fines or civil disabilities, such as suspension of licenses" generally does not render a habeas petitioner in custody); *Best v. N.Y. City Police Dep't Sex*

---

[9]  The record does not indicate, and neither Petitioner nor Respondent allege, that Petitioner has any term of post-release supervision left to serve on the convictions challenged in the petition.  (Pet. 14; Resp't Opp'n 7 n.1.)  After Petitioner was released from custody on August 28, 2013, (Resp't Opp'n 4), he was resentenced for a different crime on October 17, 2016, (Pet. 14); *see Maleng v. Cook*, 490 U.S. 488, 492 (1989) ("While we have very liberally construed the 'in custody' requirement for purposes of federal habeas, we have never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction."); *cf. Garlotte v. Fordice*, 515 U.S. 39, 45 (1995) (holding that a prisoner serving "a continuous stream" of consecutively imposed sentences may bring habeas challenges to any of them and noting that "[u]nlike the habeas petitioner in *Maleng*, [petitioner] is serving consecutive sentences").

*Offender Unit*, No. 20-CV-2382, 2020 WL 2933441, at *2 (E.D.N.Y. June 3, 2020) ("As to reporting requirements and other consequences resulting from conviction of a sex crime, courts have typically found they do not amount to custodial aspects of a sentence."); *Fowler v. Fischer*, No. 18-CV-2769, 2019 WL 2551766, at *4 (S.D.N.Y. May 30, 2019) (holding that a level-two sex offender in the state of New York is not in custody because he "is free to travel anywhere he wanted, to live anywhere he wanted and to accept any employment that is offered to him"), *report and recommendation adopted*, 2019 WL 2544472 (S.D.N.Y. June 20, 2019).

Although Petitioner is required to present himself every three years at a particular law enforcement agency to be photographed, the burden imposed by this requirement only impedes Petitioner's movement once every three years. *See Williamson*, 151 F.3d at 1184 ("[T]he constraints of this [sex offender registration] law lack the discernible impediment to movement that typically satisfies the 'in custody' requirement."). This requirement is not the type of restraint on liberty that the Second Circuit has recognized as sufficient to satisfy the in-custody requirement. *See Davis*, 524 F. Supp. 2d at 188 (explaining that "courts have consistently held that the sex offender registration requirement . . . does not constitute the type of severe, immediate restraint on physical liberty necessary to render a petitioner 'in custody' for the purpose of federal habeas corpus review" in part because it "does not prevent petitioner from traveling and does not restrain his liberty in any meaningful way"); *see also id.* at 185 (noting requirement to appear in person to be photographed every three years). However, unlike the petitioner in *Vega*, who could "go anywhere at any time and do anything she wants as long as she avoids an intentional confrontation with [the subject of the protective order]," Petitioner's liberty is constrained, as he is "affirmatively required to do [some]thing" at a particular location and to do so once every three years. 861 F.3d at 75; *see also* N.Y. Corr. Law § 168-f(b-3); *Barry*

14

*v. Bergen Cnty. Prob. Dep't*, 128 F.3d 152, 161 (3d Cir. 1997) (holding that even though "petitioners were afforded a certain amount of flexibility to schedule when they would complete their respective obligations," "an individual who is required to be in a certain place — or in one of several places — to attend meetings or to perform services, is clearly subject to restraints on his liberty not shared by the public generally," supporting the conclusion that he is in custody).

Unlike the intentionally punitive statute at issue in *Piasecki*, 917 F.3d at 174–75, in which registration requirements are imposed as part of the petitioner's sentence, SORA is a remedial statute and the "SORA requirements, unlike post-release supervision, are not part of the punishment imposed by the judge; rather, SORA registration and risk-level determinations are nonpenal consequences that result from the fact of conviction for certain crimes." *People v. Gravino*, 14 N.Y.3d 546, 556–57 (2010); *see also Doe v. Cuomo*, 755 F.3d 105, 110 (2d Cir. 2014) (holding that SORA is not a punitive statute due to "(1) the calibration of notification requirements to the offender's perceived risk of re-offense; (2) the regulation of public access to and limitations on dissemination of registrant information; and (3) the protections against misuse of information" (citing *Doe*, 120 F.3d at 1278)).  Non-punitive restraints are more analogous to collateral consequences of a conviction than to criminal sanctions.  *See Virsnieks*, 521 F.3d at 720 (holding that sex offender registration requirements "resemble more closely those collateral consequences of a conviction that do not impose a severe restriction on an individual's freedom of movement" in part because they are "considered remedial, rather than punitive, in nature" (first citing *United States v. Keane*, 852 F.2d 199, 202 (7th Cir. 1988); and then citing *State v. Bollig*, 605 N.W.2d 199, 205 (2000))); *Rodriguez*, 2011 WL 519591, at *8 ("SORA's remedial nature further supports the conclusion that SORA's registration provisions are more analogous to collateral consequences of a conviction such as deportation, the loss of the right to vote, and

15

inability to become a citizen, than to severe restraints on liberty such as parole."); *see also Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 889 (2d Cir. 1996) (holding that habeas relief was available under the Indian Civil Rights Act of 1968 because the challenged sanction, banishment, was historically considered punitive and so was criminal rather than civil in nature).

The fact that SORA's registration requirement is imposed in a separate proceeding further differentiates the requirement from that in *Piasecki*, which conditions were imposed at sentencing. *See Fowler*, 2019 WL 2551766, at *5 ("In New York, [the Board] makes a recommendation to the sentencing court sixty days before a sex offender's discharge, parole or release to post-release supervision . . . . After notice to the defendant, the sentencing court makes the ultimate determination concerning designation as a sex offender. That decision is subject to appellate review." (citing N.Y. Corr. Law § 168-n.)).

New York's SORA statute requires Petitioner to present himself once every three years (rather than every three months as in *Piasecki*), and no other action — such as travelling, changing his address, or buying a new car — gives rise to the requirement. In addition, New York state courts recognize that SORA is a remedial statute, not a punitive statute as in *Piasecki*, and the registration requirement is not imposed at the time of sentence. On balance, the burden imposed by the collateral consequences of registration does not render Petitioner in custody. *See Rodriguez*, 2011 WL 519591, at *8 (listing collateral consequences, including the severe consequences of "deportation, the loss of the right to vote, and inability to become a citizen").

Moreover, the possibility that Petitioner could be charged in the future for violating these requirements is not sufficient to render him "in custody." *See Vega*, 861 F.3d at 75 (holding "the entirely speculative possibility of a future charge for a future violation" insufficient). Nor is the

requirement that he complete and mail forms each year, even though such action is not imposed on the population in general. *See id.* at 74 (holding that not every restraint not shared by the public qualifies a petitioner as "in custody," only those which "impose a severe restraint on individual liberty or the imminent threat of such a restraint"); *Kaminski v. United States*, 339 F.3d 84, 87 (2d Cir. 2003) (holding that a restitution order "limited . . . to payment on a monthly basis of the greater of ten percent of [petitioner's] monthly income or $100" did not render a petitioner in custody).

Although Petitioner complains that he is prohibited from traveling to some countries because of his sex-offender status, he does not point to a provision in SORA that creates such a restraint. Any restraint created by other countries' decisions to deny petitioner admission because of his status on the registry is not redressable by this Court, which could not order another sovereign to admit Petitioner. *See Al Hajji v. Obama*, No. 05-CV-429, 2009 WL 4251108, at *1 (D.D.C. Nov. 23, 2009) (holding that former detainees at the United States Naval Base at Guantanamo Bay, Cuba, who were held in custody by foreign governments, could not bring habeas petitions on the ground that they were suffering collateral consequences from their detention by the United States (quoting *Al Joudi v. Bush*, No. 05-CV-301, 2008 WL 821884, at *1 (D.D.C. Mar. 26, 2008))).

In addition, the fact that Petitioner's employment prospects are limited by his presence on the registry is a collateral consequence that the Second Circuit has held does not constitute custody. *See Ginsberg v. Abrams*, 702 F.2d 48, 49 (2d Cir. 1983) (per curiam) (holding that the revocation of law, real estate, and insurance licenses did not render petitioner in custody).

As to Petitioner's claim that his housing options are constrained by the "scrutiny, criticism, ridicule, [and] bias" he faces due to his sex offender status, (Pet'r Reply 2), he does not

allege that any of the stigma he faces is a part of his sentence.  At most, it is a collateral consequence of his sentence.[10]  *Wallace v. New York*, 40 F. Supp. 3d 278, 310 (E.D.N.Y. 2014) (examining whether SORA registration requirements were punitive, in the context of a 42 U.S.C. § 1983 challenge, and concluding that "alleged restraints, such as the inability to secure employment or housing" were "not otherwise attributable to [SORA's] requirements" (citing *Smith v. Doe*, 538 U.S. 84, 101 (2003))).

Finally, Petitioner alleges that his personal relationships have suffered.  "[T]he attendant humiliation" resulting from the public availability of Petitioner's sex offender status "is but a collateral consequence of a valid regulation.[11]  *See Smith*, 538 U.S. at 99 (acknowledging that "[t]he publicity [of sex offender registration] may cause adverse consequences for the convicted defendant, running from mild personal embarrassment to social ostracism" and finding the regime was not punitive because "the [s]tate does not make the publicity and the resulting stigma an integral part of the objective of the regulatory scheme"); *id.* at 101 (explaining that social stigma from the public record of a sex offense conviction was not an "affirmative disability or restraint" for purposes of analyzing whether registration was punitive).

Accordingly, Petitioner is not in custody and therefore cannot challenge the SORA requirements to his case through the habeas process.

---

[10]  If Petitioner believes that he was wrongly classified as a sex offender and is injured by the resulting stigma, he may bring a "stigma-plus" claim under 42 U.S.C. § 1983.  *See Vega v. Lantz*, 596 F.3d 77, 81–82 (2d Cir. 2010) ("[W]rongly classifying an inmate as a sex offender may have a stigmatizing effect which implicates a constitutional liberty interest." (citing *McKune v. Lile*, 536 U.S. 24, 32 (2002))).

[11]  Like Petitioner's difficulties finding housing where he is free from "scrutiny, criticism, ridicule, [and] bias," (Pet'r Reply 1–2), this effect of his conviction is properly addressed, if at all, in a "stigma-plus" section 1983 claim.

### c.  The petition appears to be untimely

Respondent argues that the petition is untimely because Petitioner's judgment of conviction became final on July 28, 2010, when he withdrew his direct appeal, and he did not file a habeas petition or other application for post-conviction relief within a year of that date.  (Resp't Opp'n 10–11.)  Respondent contends that Petitioner moved to vacate his judgment of conviction pursuant to C.P.L. § 440.10 on November 19, 2015, the motion was denied on September 18, 2017, (*id.* at 4–5), and the Appellate Division denied leave to appeal on July 3, 2018, (*id.* at 5).  Petitioner also moved for reconsideration of the state trial court's decision, which the Supreme Court denied on November 19, 2018.  (*Id.* at 6.)

Petitioner argues that his petition is timely and references a motion to vacate his judgment of conviction, which he filed on November 19, 2015, a motion for reconsideration of the Supreme Court's decision denying that application, and his appeal from the denial of that motion, which was denied on November 19, 2018, less than a year before he filed the instant petition.  (Pet'r Reply 3–4.)  Petitioner also notes state court delays in deciding his petition, (*id.* at 4), and reiterates his arguments in support of the merits of his claims, (*id.* at 4–10).[12]

---

[12]  In his reply to Respondent's opposition to the petition, Petitioner references his trial attorney's "knowledge of [his] innocence," but does not otherwise make any arguments in support of an innocence claim.  (Pet'r Reply 5.)  The Court does not construe Petitioner as raising an actual innocence claim because he does not purport to put forth "new evidence [that] truly throws the [P]etitioner's conviction into doubt."  *Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004); *see also Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) ("[A] claim of actual innocence must be both 'credible' and 'compelling.'" (quoting *House v. Bell*, 547 U.S. 518, 521, 538 (2006))); *Schlup v. Delo*, 513 U.S. 298, 324 (1995) (describing what makes a claim credible).  A credible claim of actual innocence consists of "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial."  *Schlup*, 513 U.S. at 324; *see also Gross v. Graham*, 802 F. App'x 16, 20 (2d Cir. 2020) (citing the *Schlup* credibility standard and discussing the higher burden of proof for a freestanding innocence claim); *House*, 547 U.S. at 537 (citing the *Schlup* credibility standard); *Rivas*, 687 F.3d at 541 (same).

Because the Court finds that Petitioner was not in custody at the time he filed the petition

and therefore cannot pursue his habeas claim, the Court declines to determine whether the claims

are time-barred.[13]

## III.  Conclusion

For the foregoing reasons, the Court denies the petition for a writ of habeas corpus.  The

Court will not issue a certificate of appealability as Petitioner has not made a substantial showing

of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Court certifies pursuant to 28

U.S.C. § 1915(a) that any appeal would not be taken in good faith and, therefore, denies *in forma*

---

[13]  Although Petitioner contends that he withdrew his direct appeal as advised on an unspecified date, Respondent contends that Petitioner withdrew his appeal on July 28, 2010, and that the Appellate Division marked Petitioner's appeal withdrawn in a July 28, 2010 order, (Resp's Opp'n 4), and there are no allegations indicating that Petitioner sought to appeal the state court judgment.  As a result, Petitioner's conviction appears to have been final on August 27, 2010, thirty days after he withdrew his appeal.  *Torres v. Ercole*, No. 06-CV-4058, 2009 WL 2337997, at *2 (S.D.N.Y. July 29, 2009) ("Even if the withdrawal of an appeal is appealable, petitioner was required to seek leave to appeal to the New York Court of Appeals within thirty days." (citing *Letlow v. Sabourin*, No. 01-CV-103, 2003 WL 21919430, at *2 (E.D.N.Y. Apr. 14, 2003))).  Therefore, the time for Petitioner to file a petition for habeas relief expired a year later on August 29, 2011.  *See Favourite v. Colvin*, 758 F. App'x 68, 69 (2d Cir. 2018) ("[AEDPA] imposes a one-year statute of limitations for filing a habeas corpus petition, which begins to run following . . . 'the date on which the judgment became final.'" (quoting 28 U.S.C. § 2244(d)(1)(A))); *Harper v. Ercole*, 648 F.3d 132, 134 (2d Cir. 2011) ("Once tolling ends and the limitations clock resumes, a [section] 2254 petition is timely as long as it is filed before the total untolled time exceeds one year.").

Petitioner filed his habeas petition on July 24, 2019, making it untimely.  Moreover, although Petitioner's post-conviction motion was rejected less than a year before he filed this petition, it does not make his habeas petition timely.  *See Rhines v. Weber*, 544 U.S. 269, 272 (2005) ("[T]he [one-]year statute of limitations imposed by [AEDPA] was tolled while [petitioner's] state habeas corpus petition was pending . . . ."); *Davis v. Lempke*, 767 F. App'x 151, 152–53 (2d Cir. 2019) (explaining that "habeas petitions must be filed within one year of the date on which the petitioner's state judgment became final" but that the clock is stopped while post-conviction motions are pending).  When Petitioner filed his post-conviction motion on November 19, 2015, the one-year statute of limitation for filing a habeas petition had already expired.  *See Menefee*, 391 F.3d at 154 ("When the AEDPA limitations period expired . . . , [petitioner] had not yet filed the [section] 440 motion, thereby losing the opportunity to invoke 28 U.S.C. § 2244(d)(2)'s provision for tolling the limitations period during the pendency of a state post-conviction motion.").

*pauperis* status for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is directed to enter judgment, mail a copy of this Memorandum and Order to Petitioner at his address of record, and close this case.

Dated:  January 18, 2021
        Brooklyn, New York

                                    SO ORDERED:


                                    _____s/ MKB_____
                                    MARGO K. BRODIE
                                    United States District Judge